## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JARIDA GARCIA-MELENDEZ, ET AL., | |
| Plaintiffs, | |
| v. | Civil No. 14-1560 (SEC) |
| JOSE RODRIGUEZ GONZALEZ, ET AL., | |
| Defendants. | |

## OPINION AND ORDER

Jarida García and her immediate family (collectively, Plaintiffs) bring this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that Defendants, Agent José Rodríguez and Sergeant Luis López, violated their rights protected under the Fourth and Fourteenth Amendments to the Constitution of the United States.[1] They also bring supplemental claims under Article II of the Commonwealth's Constitution and general tort claims under Puerto Rico law. Pending before the Court is Defendants' motion for summary judgment. The motion is **granted in part and denied in part**.

### I.    Factual and Procedural Background

On the afternoon of July 17, 2013, Jarida García visited the Command Center of the Puerto Rico Police Department at Carolina (the police station) with her five year old daughter, V.B.G. Shortly after leaving the station, García noticed that an unmarked vehicle, without sirens or police lights, was tailgating her. She switched to the right lane to let the vehicle pass, but the vehicle followed her to the right lane. García became frightened and tried to call the police. Because the unmarked car was still following her, she exited to a side road and stopped to see whether the car would pass

---

[1] Initially, Plaintiffs also brought causes of action under the Fifth and Eighth Amendments but later conceded that there were no cognizable claims under either. See Docket # 52, p. 11.

her. To García's surprise, the unmarked vehicle stopped behind her and she continued trying to call the police. When she looked back, she saw a man dressed as a police officer approaching her vehicle. García lowered her window and the officer, in an aggressive manner, ordered her to hand over her license and registration. Because the officer's uniform did not display his last name or his badge, García asked him to identify himself at least twice and inquired as to the reason he had stopped her. The officer, however, responded in a harsh tone: "I am the one asking questions here."

García told the officer that she did not feel safe and that she would give him her license and registration at the police station which she had just left. According to García, the unidentified officer, who was later revealed to be Defendant Agent Rodríguez, agreed to proceed with the traffic stop at the police station. Agent Rodríguez denies this, and instead alleges that García declined to turn over her license and registration, and fled the scene.

García then drove back to the police station and stopped at a traffic light on the left lane that turned towards the station. As she waited, Agent Rodríguez suddenly introduced his left hand through the window, grabbed García by the hair, and attempted to pull her out of her vehicle. García, in shock, held tightly to the steering wheel. She screamed in fear asking Rodríguez why he was attacking her. Her daughter, who witnessed the events, also started screaming. Realizing that García was still wearing her seatbelt, Agent Rodríguez grabbed her right arm, bent it towards her body, and handcuffed García. At some point, Agent Rodríguez managed to open the door and unlock García's seatbelt.  He then pulled García out of the car and onto the street. While García was lying face-first on the pavement, Agent Rodríguez placed his knee and all of his weight on her back. García started yelling that she had a disability and that she was wearing a back brace but Agent Rodríguez kept pulling her and tightening the handcuffs. Moments after Rodríguez arrested García, Agent Julio Toledo, two other female officers, and Sergeant López (Rodríguez's supervisor) arrived at the scene. Agent Toledo then took García to the Carolina Traffic Station in Canóvanas, where she

was interviewed by Sergeant López. He noted that García had marks on her arms and that she was complaining about pain in her knees.

At approximately 7:30 p.m., García was taken to the Center for Diagnostic Treatment (CDT) in Canóvanas, where she was diagnosed with neck and back trauma. Five hours later, García was discharged with instructions to see a specialist due to the severity of her trauma. García's independent medical examiner, Dr. Fausto Boria, indicates in his expert report that, as a result of the incident, García suffered a herniated disc; intercostal neuritis/neuralgia; fracture of the coronoid process or right ulna; right ulnar nerve entrapment; and bilateral shoulder tendinitis, among other things. She also required a carpal tunnel decompression surgery. Dr. Boria concluded that García suffered a whole person impairment of 19% as a result of the traumas inflicted by Agent Rodríguez.

Immediately after being discharged from the CDT, García was taken to the Río Grande Courthouse where she was criminally charged with obstruction of justice pursuant to Article 246(a) of the Puerto Rico Penal Code of 2012. See P.R. Laws. Ann. tit. 33, § 5336.[2] This provision makes it unlawful for any person to delay or interfere with any public officer or employee in the discharge or attempt to discharge any of his duties. see id. This misdemeanor carries a maximum prison sentence of six months or a fine not to exceed $5,000. See id., § 5022. García was not represented by counsel at the probable cause hearing. The presiding judge found probable cause for her arrest. Following the judge's instructions, Agent Rodríguez, on behalf of V.B.G., filed a complaint for a protective order with the Puerto Rico Department of Family Affairs against García and her husband. On August 5, 2013, the complaint was dismissed.

---

[2] The criminal complaint and the judgement state that she was accused of violating Article 245(a) of the Puerto Rico Penal Code. Docket ## 42-5 & 42-7. But this is probably a clerical mistake because Article 245 makes it a felony to use violence or intimidation against a state officer or employee and has no subsection (a). Obstruction of Justice is typified in Article 246 of the Puerto Rico Penal Code. Subsection (a) was amended by Act. No. 246 of December 26, 2014. The amendment made minor changes to the text of the provision which are irrelevant to the case at bar.

On top of the obstruction of justice charge, Agent Rodríguez also issued two traffic tickets to García; one for talking on the phone while driving and another for disregarding his order to stop the vehicle. García filed a petition seeking review of the traffic tickets. On September 11, 2013, after a hearing where both García and Agent Rodríguez testified, the court dismissed the traffic violations stating that it gave "complete credibility to [García's] testimony." Docket # 60-5, p. 2.

A month later, on October 14, García was tried for the obstruction of justice charge. She was represented by counsel from the Puerto Rico Legal Assistance Society. Docket # 60-3, p. 3. At the hearing, the government introduced the testimony of Agent Rodríguez and Sergeant López. The record does not reveal whether defense counsel cross-examined either of these witnesses. The only evidence presented by the defense, as far as the record reveals, was García's testimony. The presiding judge convicted García for obstruction of justice and sentenced her to pay a $500 fine. Contrary to the judge that dismissed the traffic violations, the judge in the criminal trial said that she gave no credibility to García's testimony. See Docket # 49-2, p. 13. Defense counsel did not appeal her conviction.

On July 15, 2014, García and her immediate family filed this action against Agent Rodríguez and Sergeant López alleging a plethora of constitutional violations. In due course, Defendants moved for summary judgment raising several defenses, including collateral estoppel, qualified immunity, and failure to state a claim upon which relief can be granted.

## II.     Standard of Review

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), and must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1, 2 (1st Cir. 2012). A

court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014).

### III.    Applicable Law and Analysis

The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." See Grapentine v. Pawtucket Credit Union, 755 F.3d 29, 31 (1st Cir. 2014). To prevail on a § 1983 claim, a plaintiff must show that (1) "that some person deprived him of a federal right," and (2) that such person "acted under color of state or territorial law." Id. (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)). Here, Plaintiffs seek monetary compensation, inter alia, for damages suffered as a result of Defendants' alleged false arrest and excessive use of force against García.

The factual circumstances of the initial traffic stop and subsequent arrest leading to García's conviction are hotly contested. At the outset, Defendants seek to lock down Agent Rodríguez's version of the facts by arguing that, pursuant to the collateral estoppel doctrine, the criminal conviction precludes García from presenting her version of the facts surrounding her arrest. Because Defendants' motion relies heavily on Agent Rodríguez's version of the facts, the Court addresses their collateral estoppel defense first.

#### a.  Collateral Estoppel

Federal courts must look to state law to determine whether a party to a § 1983 action would be barred from re-litigating an issue or claim that was raised or could have been raised in a previous state court action. See 28 U.S.C. § 1738; Allen v. McCurry, 449 U.S. 90, 96 (1980); Arecibo Radio Corp. v. Puerto Rico, 825 F.2d 589, 591–92 (1st Cir. 1987).  Accordingly, Puerto Rico law on collateral estoppel applies.

Originally, Puerto Rico law only recognized the doctrine of res judicata, which forecloses relitigation of claims that have been the subject of a previous judgment.

This doctrine applies only if "there [is] the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such" in the case decided by the judgement "and that in which the same is invoked." P.R. Laws Ann. tit. 31, § 3343. Although the statute speaks only of "res judicata," also known as claim preclusion, the Puerto Rico Supreme Court has adopted the related concept of collateral estoppel, also known as issue preclusion. Under the latter doctrine, the previous adjudication of facts essential to a final and valid judgment, "is conclusive in a second action *between the same parties*, even when there are different causes of action." A & P Gen. Contractors v. Asoc. Cana, 10 P.R. Offic. Trans. 984, 995–996, (1981) (italics in the original).

Both issue preclusion and claim preclusion "seek to conserve judicial resources by 'prevent[ing] plaintiffs from splitting their claims' and instead 'provide a strong incentive for them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit.'" Rivera v. Puerto Rico Elec. Power Auth., 4 F. Supp. 3d 342, 350 (D.P.R. 2014). The main difference is that collateral estoppel dispenses with the requirement of identity of causes. See Worldwide Food Dis., Inc. v. Colón et al., 133 D.P.R. 827, 837, n. 4 (1993), P.R. Offic. Trans. Contrary to res judicata, which also applies to claims that could have been litigated in a prior action, see Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 219 (1992), collateral estoppel is limited "to issues that were actually litigated and adjudicated." Martínez Díaz v. E.L.A., 182 D.P.R. 580, 592 (2011) (translation supplied); see also 18 Fed. Prac. & Proc. Juris. § 4420 (2d ed.) ("The fundamental rationale of issue preclusion dictates the clearly settled requirement that it be limited to matters that have been actually decided"). For this reason, unless the essential facts are specified in the judgment, the party raising collateral estoppel must produce not only the judgment but the whole record as well. See Presidential v. Transcaribe, 186 D.P.R. 263, 281 (2012). Where neither extrinsic evidence nor the record reveals that the issue sought to be precluded was actually litigated, collateral estoppel cannot apply. See id. (citing U.S. v. International Bldg. Co., 345 U.S. 502, 504–505 (1953)).

The contours of collateral estoppel in Puerto Rico are somewhat vague. Indeed, the Puerto Rico Supreme Court has been "forced to admit" that the development of this doctrine, which has resorted to both "Spanish texts and common law sources," "has not taken a definite trajectory" in the Commonwealth. A & P Gen. Contractors, 10 P.R. Offic. Trans. at 996. In general terms, collateral estoppel—as applied in Puerto Rico—bars relitigation of factual issues where: (1) there is mutuality of parties—that is the plaintiffs and the defendants in the later action are the same as (or privy to) the parties in the earlier action, see Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 220–221 (1992); (2) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (3) the issue was actually litigated; (4) the issue was determined by a valid and binding final judgment; and (5) the determination of the issue was essential to the judgment. See Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 770 (1st Cir. 2010). But even in cases that meet all these requirements, the Puerto Rico Supreme Court has declined to apply collateral estoppel if doing so would defeat the interests of justice or when public policy counsels against it. See Parrilla v. Rodríguez, 163 D.P.R. 263, 269 (2004) (collecting cases).

To recap, Defendants argue that García's version of the facts leading to her arrest is foreclosed by collateral estoppel because the judge presiding her criminal case gave no credibility to her testimony. Defendants vastly oversimplify this thorny issue and their argument ultimately fails to pass muster.

Defendants' first obstacle is meeting the mutuality requirement. In their reply, Defendants assert for the first time that "there is identity of the parties involved," Docket # 62-1, p. 3, yet they fail to marshal any argument or authority supporting this conclusion.[3] Neither Agent Rodríguez nor Sergeant López was an actual party to García's criminal conviction for obstruction of justice; the Commonwealth of Puerto Rico prosecuted the misdemeanor charge against García.

---

[3] Defendants waived any argument in support of this conclusory statement. Muñiz v. Rovira, 373 F.3d 1, 8 (1st Cir. 2004) (deeming waived skeletal arguments unaccompanied by "citation to any pertinent authority").

The Puerto Rico Supreme Court has been strict in requiring mutuality of both the plaintiffs and the defendants as a precondition to collateral estoppel. In A & P Gen. Contractors, the court noted that most jurisdictions in the United States allow some type of non-mutual collateral estoppel: (1) defensive non-mutual, asserted by a defendant to bar the litigation of an issue that has already been raised and lost by the plaintiff in a prior suit against another party; and (2) offensive non-mutual, asserted by a plaintiff to bar "the defendant from relitigating issues previously litigated and lost against another party." 10 Offic. Trans. at 991. Both share the common denominator that the estopped party litigated and lost in the prior suit. Id.[4] Despite acknowledging that defensive non-mutual collateral estoppel "has been generally accepted," id., the court declined to adopt any bright line rule to such effects. See García-Monagas v. De Arellano, 674 F.3d 45, 55, n. 12 (1st Cir. 2012). The general rule remains that Puerto Rico law on collateral estoppel requires mutuality of both the plaintiffs and the defendants. As far as the Court has been able to discern, only once has the Puerto Rico Supreme Court departed from this rule.

In Fatach v. Triple S, Inc., 147 D.P.R. 882, 890 (1999), the Puerto Rico Supreme Court held that a strong public policy warranted the application of non-mutual defensive collateral estoppel. There, the plaintiff had been previously convicted of arson. She then filed a civil suit against her insurance company seeking compensation for the damages caused by the fire. The insurance company moved for summary judgment arguing that the policy did not provide coverage for criminal acts. It argued that because the jury's finding that the plaintiff had started the fire with criminal intent was essential to support her conviction and was established beyond a reasonable doubt, collateral estoppel precluded the plaintiff from contesting this finding in her civil action. The plaintiff countered that the criminal conviction was not conclusive in the civil case because the insurance company was not a party to the criminal action.

---

[4] In this case, Defendants appear to invoke the defensive variant to preclude Plaintiff's claims.

The court began by reiterating that, contrary to Spain and most jurisdictions in the United States, Puerto Rico law mandates mutuality of parties "in *every* application of the doctrine of collateral estoppel by judgment, even in cases where the first action is criminal" and a civil suit follows. Id. at 891 (emphasis in the original) (translation supplied).[5] However, it carved out a public policy exception which disposed of the mutuality requirement and applied collateral estoppel effect to the plaintiff's felony conviction. The court reasoned that Article 11.020 of the Puerto Rico Insurance Code, which provides that "[n]o person shall be insured against the penal consequences of an offense," P.R. Laws Ann. tit. 26, § 1102, encompasses a public policy aimed at precluding people from profiting off criminal conduct by means of an insurance policy. Fatach, 147 D.P.R. at 894. Because a strict application of the mutuality requirement in that case would contravene this public policy, the court held that the plaintiffs' felony conviction was conclusive as to the factual determination of her criminal intent in starting the fire. Id. at 895. The public policy exception explicitly discussed in Fatach is absent here and so, the general rule prevails.

Even so, the Court doubts that Puerto Rico law would allow a party who lost in a previous case to bring a new claim against another party "where the outcome in the first case effectively negates the claim in the second." Cruz Berríos v. González-Rosario, 630 F.3d 7, 15 (1st Cir. 2010). "This is precisely the sort of outcome that defensive non-mutual issue preclusion typically guards against." Id. This skepticism is particularly strong where, as here, the defendant invokes collateral estoppel to give preclusive effect to a criminal conviction since the burden of proof required is higher than that required in civil cases. Indeed, this is one of the considerations that the Puerto Rico Supreme Court took into account when it applied non-mutual collateral

---

[5] The court noted, however, that mutuality requirement is seldom met because the Commonwealth prosecutes the criminal case against the defendant, whereas the civil case is usually brought by the defendant against third parties. Fatach, 147 D.P.R. at 890, n. 4.

estoppel to the plaintiff's felony conviction in <u>Fatach</u>. <u>See</u> 147 D.P.R. at 894.[6] But the Court need not decide this complex issue because, even if some type of non-mutual exception applied, another public policy consideration militates against giving preclusive effect to García's conviction

García was convicted of a misdemeanor. The Puerto Rico Supreme Court has not decided whether, in cases where the mutuality requirement is met, misdemeanor convictions should be given the same preclusive effect as felony convictions. But it has explained that contrary to felony convictions, which are admissible as "prima facie evidence of the defendants' criminal conduct," <u>Morales Garay v. Roldán Coss</u>, 10 P.R. Offic. Trans. 909, 917 (1981); <u>see also</u> P.R. Laws Ann. tit. 32 Ap. VI, § 805(V), misdemeanors punishable with a maximum prison sentence not exceeding six months are not. These convictions are excluded, as a matter of public policy, because the potential punishment is not severe enough to incentivize a defendant to litigate the charges fully, which in turn undermines the probative value of the conviction. <u>See Maysonet v. Granda</u>, 133 D.P.R. 676, 685–686, n. 8 (1993) (holding that the severity of the punishment is the determining criterion on whether a defendants lacks incentive to litigate).

It stands to reason that, if a misdemeanor conviction does not have sufficient probative value to be admitted as prima facie evidence of the facts essential to support it, then it should not be admitted as conclusive evidence of such facts either. But renowned Puerto Rico commentator Ernesto Chiesa[7] and other courts that have interpreted similar evidentiary provisions have said that these rules do not intend to disrupt the doctrines of res judicata and collateral estoppel. <u>See Mueller v. J. C. Penney</u>

---

[6] Another consideration that could weigh in favor of applying non-mutual collateral estoppel in this case, is that the lack mutuality stems in part from the legal fiction created by § 1983; to with, that a "state official's unconstitutional conduct constitutes state action under the Fourteenth Amendment but not the Eleventh Amendment." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 105, (1984).

[7] <u>See</u> REGLAS DE EVIDENCIA DE PUERTO RICO 2009: Análisis por el Prof. Ernesto L. Chiesa, San Juan, Pubs. J.T.S., 2009, p. 276.

Co., 173 Cal. App. 3d 713, 721, n. 10 (Ct. App. 1985) ("this rule of evidence is inapplicable here where the substantive effect of using a conviction as collateral estoppel is the issue"); Crowall v. Heritage Mut. Ins. Co., 118 Wis. 2d 120, 125, n. 4 (Ct. App. 1984). These courts, however, do recognize that certain misdemeanor convictions may lack the reliability of felony convictions "because the time, energy and resources to defend are disproportionate to the penalty," Leader v. State of California, 182 Cal. App. 3d 1079, 1086 (Ct. App. 1986), and therefore determine the preclusive effect of misdemeanor convictions on a case-by-case basis examining various factors.[8] For instance, they examine whether the conviction was for a serious offense so that that the accused had sufficient incentive to defend himself fully. See id.; see also Scott v. Robertson, 583 P.2d 188, 192 (Alaska 1978). In this regard, the prospect and the probability of incarceration are relevant to the analysis. See id., n. 17 ("in a particular offense, although technically subject to incarceration, the likelihood of such punishment is so remote as not to justify its being considered as a serious offense for this purpose."). Courts also consider the actual efforts undertaken to defend the action. See Crowall 118 Wis. 2d at 126 (giving preclusive effect to a prior misdemeanor conviction where the estopped party "was represented by an attorney, testified on his own behalf, presented witnesses and cross-examined State witnesses"). Whether or not the defendant had the right to a jury trial may also factor in whether the conviction will have preclusive effect. See Scott, 583 P.2d at 193.

---

[8] The jurisprudence of other state courts, although non-binding, is persuasive under Puerto Rico law. See e.g. Monteagudo Pérez v. E.L.A., 172 D.P.R. 12, 19, n. 2 (2007). California case law is particularly persuasive as the California Evidence Code was the subject of continuous discussion by the Permanent Advisory Committee of the Puerto Rico Rules of Evidence in preparing the report and recommendation for the new Evidence Rules of 2009. See Secretariado de la Conferencia Judicial y Notarial del Tribunal Supremo, Informe de las Reglas de Derecho Probatorio, 2007, p. 3 (available at http://www.ramajudicial.pr/sistema/supremo/Informe_Reglas-de-Derecho-Probatorio-2007.pdf). The California Evidence Code also had a marked influence in the Puerto Rico Rules of Evidence of 1979, see id., and specifically in the discussion of the Rule precluding the admissibility of misdemeanor convictions. See Comité de Reglas de Evidencia del Secretariado de la Conferencia Judicial, Primer examen de las Reglas de Evidencia de 1979: comentarios y recomendaciones, p. 471 (available at http://www.ramajudicial.pr/sistema/supremo/conferencia/Primer-Examen-Reglas-Evidencia-1979.pdf).

Here, García's misdemeanor for obstruction of justice carried a maximum prison sentence of six months.[9] She was not represented by counsel at the preliminary hearing to determine whether there was probable cause for arrest. Although at trial, García was represented by an attorney from the Puerto Rico Legal Assistance Society and testified on her own behalf, the record does not reveal that her attorney cross-examined any witnesses or whether he challenged the propriety of Agent Rodríguez's intervention. Her conviction hinged exclusively on the fact that the presiding judge gave no credibility to García's version of events. See Docket # 49-2, p. 14. Conversely, two months earlier, the judge presiding García's challenge to the traffic tickets gave complete credibility to her testimony and dismissed the traffic violations that led to her arrest in the first place. See Docket # 60-5.[10] That two state judges had opposing views regarding García's credibility suggests that there are genuine issues of fact that are better left for a jury to decide. See e.g. Scott, 583 P.2d at 193 ("There may be some justification for regarding the conviction differently in jurisdictions which do not insure rights to jury trial and to counsel for misdemeanor prosecutions"). On this record, and considering the nature of the offense, the Court has serious doubts as to whether García had sufficient incentive to litigate her misdemeanor charge fully enough to warrant giving preclusive effect to her conviction.[11]

Last but not least, Defendants do not specify which facts they seek to establish as precluded. Rather, they seek to use collateral estoppel to foreclose Plaintiffs' objections to Defendants' statement of uncontested facts and to challenge Plaintiffs' additional statement of uncontested facts. Yet, Defendants make no attempt to show

---

[9] In Puerto Rico, the classification of an offense as a misdemeanor or a felony no longer determines the admissibility of a conviction in a subsequent suit. The sole criterion to determine its admissibility is whether the potential for imprisonment is longer than six months. See P.R. Laws Ann. tit. 32 Ap. VI, § 805(V).

[10] These tickets were admitted as evidence in García's criminal trial. But according to Plaintiffs, García's counsel introduced no evidence as to the fact that they had been eliminated.

[11] García did not appeal her conviction. And it would have made little sense to do so since she was sentenced only to pay a five hundred dollar fine. If García had to retain private representation to file the appeal, it is very likely that the costs would have been significantly higher than the fine itself.

that the facts they seek to preclude were actually litigated and essential to the conviction. In short, Defendants have failed to shoulder their burden of establishing the elements for collateral estoppel. Accordingly, both Agent Rodríguez and García will be able to testify fully as to all the relevant facts and the jury will decide whom to believe.

### b. False Arrest

Defendants move to dismiss García's false arrest claim asserting that "it is clear that [Agent] Rodríguez had probable cause to arrest [García] for obstruction of justice." Docket # 42, p. 22. This underdeveloped argument, however, presumes a favorable ruling on their collateral estoppel defense. Regardless, García's false arrest claim under § 1983 seems to be barred by the Supreme Court decision in Heck v. Humphrey, 512 U.S. 477 (1994). There, the Court held that a plaintiff cannot bring a § 1983 action that "would necessarily imply the invalidity of his conviction or sentence," unless he proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486–487. This "favorable termination requirement" operates "[r]egardless of the state law concerning res judicata." Id. at 486, n. 6. Here, García has not alleged that her conviction was reversed or otherwise held invalid and a favorable judgment on her false arrest claim would necessarily imply that her conviction was void for want of probable cause.[12]

In Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998), the First Circuit recognized that the concurring and dissenting opinions in Spencer v. Kemna, 523 U.S. 1 (1998), "may cast doubt upon the universality of Heck's 'favorable termination'

---

[12] See Wyatt v. Cole, 504 U.S. 158, 165 (1992) ("police officers sued for false arrest under § 1983 were entitled to the defense that they acted with probable cause") (construing Pierson v. Ray, 386 U.S. 547, 555–557 (1967)); see also Pueblo v. Ortiz Díaz, 23 P.R. Offic. Trans. 749 (1989) (in a charge for obstruction of justice, the legality of the intervention "is crucial for determining [the defendant's] guilt"); see also Abreu-Guzmán v. Ford, 241 F.3d 69, 75 (1st Cir. 2001) (Under Puerto Rico law, a cause of action for false arrest focuses on whether the arresting officers "'lacked reasonable cause for believing that [the suspect] committed [an] [offense].'").

requirement." <u>Figueroa</u>, 147 F.3d at 81 (citing <u>Spencer</u> 523 U.S. at 19 (Souter J. concurring); <u>id.</u> at 21–22 (Ginsburg J. concurring and Stevens J. dissenting)). This is particularly relevant in this case, where García was sentenced only to pay a fine and was never in custody after her conviction. As Justice Souter remarked:

> If… people who were merely fined for example… were required to show the prior invalidation of their convictions or sentences in order to obtain § 1983 damages for unconstitutional conviction or imprisonment, the result would be to deny any federal forum for claiming a deprivation of federal rights to those who cannot first obtain a favorable state ruling.

<u>Heck</u>, 512 U.S. at 500 (Souter J. concurring); <u>see also</u> <u>Spencer</u>, 523 U.S at 21 (Ginsburg J. concurring) ("I have come to agree with Justice Souter's reasoning: Individuals without recourse to the habeas statute because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within § 1983's 'broad reach.'"). But the First Circuit regarded the concurring and dissenting opinions in <u>Spencer</u> as dicta and noted that the Supreme Court has admonished "the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the Court 'the prerogative of overruling its own decisions.'" <u>Figueroa</u>, 147 F.3d at 81, n. 3. Just as the First Circuit did in <u>Figueroa</u>, the Court is inclined to obey this admonition. <u>Id.</u>

    Yet, because neither Defendants nor Plaintiffs have addressed this issue,[13] the Court gives notice of its intent to dismiss García's false arrest claim under § 1983 as

---

[13] Although Defendants did not raise this issue, the First Circuit has proceeded under the assumption that the <u>Heck</u> bar is jurisdictional and, therefore, the Court must raise it sua sponte. <u>See</u> <u>White v. Gittens</u>, 121 F.3d 803, 806 (1st Cir. 1997) (Raising the <u>Heck</u> bar and dismissing the plaintiff's § 1983 claim noting "that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting."); <u>see also</u> <u>McGann v. Eaton</u>, 197 F. App'x 5, 5 (1st Cir. 2006) (per curiam) (unpublished) (affirming the District Court's dismissal of the plaintiff's § 1983 complaint "for failure to meet the jurisdictional requirements of <u>Heck</u>"); <u>see also</u> <u>Johnson v. Calabrett</u>, 107 F.3d 3 (2d Cir. 1997) (unpublished) (affirming the district court's sua sponte dismissal pursuant to the <u>Heck</u> bar); <u>but see</u> <u>Polzin v. Gage</u>, 636 F.3d 834, 837 (7th Cir. 2011) (Per Curiam) (stating that "[t]he Heck doctrine is not a jurisdictional bar" and holding "explicitly that district courts may bypass the impediment of the <u>Heck</u> doctrine and address the merits of the case."); <u>Reaves v. Pennsylvania Bd. of Prob. & Parole</u>, 580 F. App'x 49, 54 (3d Cir. 2014) (unpublished) ("We need not reach the

barred by <u>Heck</u>. <u>See</u> Fed. R. Civ. P. 56(f). Moreover, because it is unclear whether Puerto Rico law allows civil actions that would imply the invalidity of a conviction, the Court is also inclined to dismiss any supplemental claim for false arrest that García may have under Puerto Rico law. <u>See</u> 28 U.S.C. § 1367(c)(1) & (4) ("district court may decline to exercise to exercise supplemental jurisdiction if… the claim raises a novel or complex issue of State law…or, in exceptional circumstances, there are other compelling reasons for declining jurisdiction."). García will have twenty days to file a brief on these issues. Defendants may respond pursuant to the Federal Rules of Civil Procedure.

### c.  Excessive Use of Force and Qualified Immunity

Agent Rodríguez argues that he should be afforded qualified immunity on García's claim for excessive use of force. Whether an officer is entitled to qualified immunity turns on two questions: (1) whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct," <u>Miranda-Rivera v. Toledo-Davila</u>, 813 F.3d 64, 72 (1st Cir. 2016) (internal quotations and citations omitted). Agent Rodríguez concedes that "it is clearly established that a police officer cannot use more force than necessary." Docket # 42. Thus, the Court only addresses the first prong of the analysis.

García's claim for excessive use of force is grounded "on the Fourth Amendment right to be free from unreasonable seizures of the person." <u>Raiche v. Pietroski</u>, 623 F.3d 30, 36 (1st Cir. 2010). "The Fourth Amendment is implicated where an officer exceeds the bounds of reasonable force in effecting an arrest or

---

operation of <u>Heck</u>, which is not a jurisdictional rule and may be bypassed."); <u>Scribner v. Dillard</u>, 141 F. App'x 240, 241 (5th Cir. 2005) (unpublished) ("the defendants have therefore waived any defense they may have had under <u>Heck</u>"); <u>Cummings v. City of Akron</u>, 418 F.3d 676, 681 n.3 (6th Cir. 2005) (noting, but not deciding, the issue).

investigatory stop." Id. In this type of claim, "a pre-trial detainee need not necessarily prove the officer's intent to harm or punish, only that, from an objective viewpoint, the officer's action was 'not rationally related to a legitimate governmental objective or that it [was] excessive in relation to that purpose.'" Miranda-Rivera, 813 F.3d at 70 (quoting Kingsley v. Hendrckson, 135 S. Ct. 2466, 2469 (2015)). Instead, courts must determine whether "the defendant officer employed force that was unreasonable under the circumstances." Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010) (quoting Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007)). In this analysis, courts must "balance the individual's interest against the government's," weighing the so-called Graham factors: "(1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" Raiche, 623 F.3d at 36 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

In this case, there is a wide gulf between García's version of the facts and that of Agent Rodríguez. But drawing all reasonable inferences in García's favor, as the Court must, there are genuine issues of material facts as to whether Agent Rodríguez employed excessive force while arresting García.

The Court turns to the first Graham factor—the severity of the crime at issue. Agent Rodríguez first stopped García because she was driving while using her cell phone. Absent other circumstances, this relatively minor infraction does not justify an officer in the violent removal of a person from a stopped vehicle, let alone the additional force that Agent Rodríguez applied when García was face first on the pavement offering no resistance. See Raiche v. Pietroski, 623 F.3d 30, 37 (1st Cir. 2010). Agent Rodríguez argues that there were such circumstances here because García had refused to hand over her license and registration and fled the scene. García, however, spins a different tale. She alleges that Agent Rodríguez stopped her in an unmarked vehicle using no sirens or police lights. She also states that Rodríguez was not wearing his badge and that his uniform did not show his name. After Agent

Rodríguez refused twice to identify himself, García told him that she did not feel safe and that she would give him her license and registration at the police station she had recently left just three stoplights behind. The severity of the offense, under these circumstances, did not justify the use of force employed by Agent Rodríguez.

The second factor merits only a brief comment. Defendants do not point to evidence on record indicating that García posed a threat to Agent Rodríguez or to the safety of other citizens.

The third factor—whether García was actively resisting arrest or attempting to evade arrest by flight—also weighs against immunity. Agent Rodríguez does not claim that García was either speeding, driving in an unsafe manner, or otherwise attempting to lose him. It is telling García was arrested in the left lane that turns precisely to the police station where García had told Rodríguez that she was heading. Moreover, she was not charged with resisting arrest. Although it is true that García held to the steering wheel and there might have been some struggle when Rodríguez suddenly started pulling García from her vehicle, a reasonable jury could conclude that García was not resisting arrest but simply trying to protect herself from a violent Agent Rodríguez. This is particularly true if it gives credibility to her fears that Agent Rodríguez could be an unidentified assailant posing as a police officer.

Even assuming that García was resisting arrest and that some force was necessary, this does not mean that Agent Rodríguez was free to exercise unreasonable force to arrest her. See Thore v. Howe, 466 F.3d 173, 180 (1st Cir. 2006) ("Even the fact that [the] defendant was convicted of assault on a police officer does not… as a matter of law necessarily bar a § 1983 claim of excessive force."); see also Ballard v. Burton, 444 F.3d 391, 399–400 (5th Cir. 2006) (holding that a state conviction for simple assault did not necessarily imply that the defendant did not use excessive force). The physical difference between Agent Rodríguez (6'1" male) and García (5'3" female) suggests that he did not need to use significant force to subdue the latter. It is

up to the jury to determine whether the force employed by Rodríguez in subduing García was reasonable under the circumstances.

### d.  Supervisory Liability

Section 1983 does not provide for liability on the basis of the tort theory of respondeat superior, nor can a supervisor's liability rest only on his position of authority. See Guadalupe–Báez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016). A supervisor "may be found liable only on the basis of h[is] own acts or omissions." Gutiérrez–Rodríguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989) (quoting Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989)). For supervisory liability to attach, a plaintiff must show "that one of the supervisor's subordinates abridged the plaintiff's constitutional rights" and that "the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." Guadalupe-Báez, 819 F.3d at 514–15 (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)). But mere negligence does not suffice; the supervisor's conduct must demonstrate "reckless or callous indifference to the constitutional rights of others." Febus–Rodríguez v. Betancourt–Lebrón, 14 F.3d 87, 92 (1st Cir. 1994).

Where, as here, liability is premised on a supervisor's deliberate indifference, the plaintiff must show that the official had knowledge of facts from which he could draw the inference that a substantial risk of serious harm existed. See Guadalupe–Báez, 819 F.3d at 515. Further, "[c]ausation remains an essential element, and the causal link between a supervisor's conduct and the constitutional violation must be solid." Id. citing Ramírez–Lluveras v. Rivera–Merced, 759 F.3d 10, 19 (1st Cir. 2014). This requires evidence "that the supervisor's conduct led inexorably to the constitutional violation." Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995). A plaintiff can meet this difficult standard, for example, by proving inaction despite a "known history of widespread abuse sufficient to alert a supervisor to

ongoing violations." <u>Maldonado–Denis v. Castillo–Rodríguez</u>, 23 F.3d 576, 582 (1st Cir. 1994).

Here, Plaintiffs do not argue that there was history of abuse that should have alerted Sergeant López that Rodríguez was prone to constitutional violations. And it would be hard to do so since at the time of García's arrest, Agent Rodríguez had only four administrative complaints, two of which are irrelevant to this case. The others involved a verbal abuse and an illegal search, the details of which are not part of the record. Barring exceptional circumstances, two complaints are insufficient to hold Sergeant López liable because "isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." <u>Maldonado-Denis</u>, 23 F.3d at 582 (construing <u>Voutour v. Vitale</u>, 761 F.2d 812, 819 (1st Cir. 1985) (finding no liability though police chief knew of past complaints of brutality; plaintiff failed to show a pattern so striking that it would permit an inference of supervisor's encouragement or approval of officers' actions)). To cinch matters, there is no evidence on record implicating Agent Rodríguez in previous incidents involving excessive use of force. Indeed, Plaintiffs admit that before García's incident, no person or entity within the Puerto Rico Police Department has ever informed Sergeant López of any problem or allegation concerning violence by Agent Rodríguez. In short, Plaintiffs have not demonstrated that Sergeant López had knowledge of facts from which he should have drawn an inference that there was a substantial risk that Agent Rodríguez would inflict serious harm. <u>See</u> <u>Guadalupe-Baez</u>, 819 F.3d at 515.

Plaintiffs also argue that López should be held liable because, despite listening to García's version of the events and noting that she was visibly injured shortly after her arrest, he proceeded with the criminal charge. Plaintiffs' contention is that by choosing to believe Agent Rodríguez's version of the incident and proceeding to file the criminal complaint against García, Sergeant López somehow violated García's

constitutional rights. This argument fails. As the First Circuit said in <u>Landrigan v. City of Warwick</u>, 628 F.2d 736, 744 (1st Cir. 1980),

> It is not unusual for a citizen who is arrested and the arresting officer to have divergent views of the material factors. The arrestee may often attribute to the officer a bad or unconstitutional motive and, in effect, accuse him of bad faith. Such charges, even if later shown to be founded, do not necessarily indicate that the prosecution is itself being conducted in bad faith.

Sergeant López had no personal knowledge of the facts leading to García's arrest and he was under no obligation to give credit to García's version of the facts. It is the job of a court or a jury, not that of an investigating officer, to assess the credibility of witnesses.

Sergeant López did not participate in Agent Rodríguez's intervention with García and Plaintiffs have failed to establish a claim against López under a supervisory liability theory. All claims against Sergeant López are therefore dismissed with prejudice.[14]

### e.  Section 1983 claims by García's husband and daughter

García's husband and daughter, Fernando Balmori and V.B.G., respectively, also bring § 1983 claims arising from Agent Rodríguez's intervention with García. As a general rule, "a litigant may only assert his own constitutional rights or immunities." <u>U.S. v. Raines</u>, 362 U.S. 17, 22 (1960); <u>McGowan v. State of Md.</u>, 366 U.S. 420, 429 (1961). Thus, only persons who have suffered the deprivation of federally-protected rights by state officials may bring an action under 42 U.S.C. § 1983. <u>See</u> <u>Torres v. U.S.</u>, 24 F. Supp. 2d 181, 183 (D.P.R. 1998). This is where Balmori's and V.B.G.'s § 1983 claims fall short.

Family members have no independent cause of action under § 1983 "unless the constitutionally defective conduct or omission was directed at the family relationship."

---

[14] Plaintiffs also argue that Sergeant López should be held liable for his participation in the filing of a protective order against García and Balmori. This claim fails for the reasons stated in the next subsection.

Torres v. U.S., 24 F. Supp. 2d 181, 183 (D.P.R. 1998). These cases fall within two categories. The first, substantive due process, prohibits states from interfering "in certain particularly private family decisions" such as "decisions whether to procreate; whether to school one's children in religious as well as secular matters; and defining the 'family' with whom one chooses to live." Valdivieso Ortiz v. Burgos, 807 F.2d 6, 8 (1st Cir. 1986) (citations omitted). The second category, procedural due process, see Santosky v. Kramer, 455 U.S. 745, 755 (1982), requires states to "adhere to rigorous procedural safeguards" when it "seeks to change or affect the relationship of parent and child in furtherance of a legitimate state interest, such as termination of parental rights." Valdivieso, 807 F.3d at 8 (citations omitted).

Balmori's and V.B.G.'s § 1983 claims would fall under the second category since they hinge on the fact that Defendants filed a petition for a protective order seeking to remove V.B.G. from her parents' custody. But these claims fail for two reasons. First, Plaintiffs are not challenging procedural deficiencies in the Commonwealth's handling of the petition for protective order. Even if they were, the responsibility of ensuring procedural safeguards would not fall upon Sergeant López. Second, Balmori and V.B.G. cannot show that they sustained an injury because the petition was dismissed and there is no evidence on record that V.G.B. was ever removed from their custody. Inasmuch as their claims are predicated on Defendants' petition for a protective order, Balmori and V.B.G. have failed to show a deprivation of federally-protected rights. Accordingly, their § 1983 claims under the Fourteenth Amendment are dismissed with prejudice.

Plaintiffs also suggest that V.B.G. has an independent § 1983 claim because she witnessed Agent Rodríguez's violent intervention with García and suffered post-traumatic stress disorder as a result. According to Plaintiffs, Agent Rodríguez's negligent and violent intervention with García "impinged on V.B.G.'s constitutional rights under the fourth and eighth amendments." Docket # 52, p. 32. These arguments are meritless. V.B.G. suffered no Fourth Amendment violation because she was not the

subject of any search or seizure. The Eighth Amendment claim is plainly absurd. The Eighth Amendment, "which prohibits 'cruel and unusual punishments inflicted,' was designed especially for the protection of those convicted of crimes." <u>Ayala Serrano v. Lebron Gonzalez</u>, 909 F.2d 8, 14 (1st Cir. 1990). V.B.G., of course, was not criminally prosecuted and was not subjected to any punishment by Defendants. V.B.G.'s Fourth and Eighth Amendment claims are therefore dismissed with prejudice.

### f. Supplemental Claims

Plaintiffs also bring supplemental claims against all Defendants under the Commonwealth's Constitution and under Articles 1802 and 1803 of the Puerto Rico Civil Code. Plaintiffs concede that Article 1803 is inapplicable to this case. These claims are therefore dismissed with prejudice. As to Plaintiffs' claims under the Commonwealth's Constitution and Article 1802 of the Civil Code (Puerto Rico's general tort statute), Defendants request is premised on the assumption that the Court would rule favorably on their collateral estoppel defense and would dismiss all federal claims. Because the Court rejected Defendants' collateral estoppel argument and retains original jurisdiction over García's claim for excessive use of force against Agent Rodríguez, Defendants' request to dismiss these claims is denied. These include Balmori's and V.B.G.'s supplemental claims. <u>See</u> <u>Rodríguez-Ríos v. Cordero</u>, 138 F.3d 22, 26–27 (1st Cir. 1998) (federal district courts "may exercise pendent jurisdiction over state-law claims of § 1983 plaintiff's spouse, provided the claims share a common nucleus of operative fact with the section 1983 claims."). But since Plaintiffs have failed to show that Sergeant López could be held liable under any theory, all claims against López are dismissed with prejudice.

### IV. Conclusion

Defendants' motion for summary judgment is granted as to Plaintiffs' claims against Sergeant López and as to Balmori's and V.B.G.'s § 1983 claims. These claims are dismissed with prejudice. The motion is otherwise denied. By October 11, 2016, García shall show cause why her § 1983 claim for false arrest should not be dismissed

as barred by <u>Heck</u> and why the Court should not decline to exercise supplemental jurisdiction on any false arrest claim that she may have under Puerto Rico law.

     **IT IS SO ORDERED.**

     In San Juan, Puerto Rico, this 21st day of September, 2016.

<u>*s/ Salvador E. Casellas*</u>
SALVADOR E. CASELLAS
U.S. Senior District Judge
